**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNENSAIKHAN CHULUUNBAT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20 C 164 |
| | ) | |
| CAVALRY PORTFOLIO SERVICES, LLC; | ) | |
| CAVALRY SPV I, LLC; EXPERIAN | ) | |
| INFORMATION SOLUTIONS, INC.; | ) | |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC; and TRANSUNION DATA | ) | |
| SOLUTIONS LLC , | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are Defendants' motions to dismiss Plaintiff Unensaikhan Chuluunbat's ("Chuluunbat") complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court will grant the motions.

## BACKGROUND

For purposes of these motions, the Court accepts as true the following facts from the complaint. *Alam v. Miller Brewing Co*., 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Chuluunbat's favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Chuluunbat is an Illinois resident. Defendant, Cavalry SPV I, LLC ("Cavalry")

is a Delaware limited liability company with its principal place of business in Valhalla, New York. Defendant Cavalry Portfolio Services ("CPS") is a Delaware limited liability company with its principal place of business in Phoenix, Arizona.[1]

Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia limited liability company. Defendant TransUnion Data Solutions, LLC, ("TransUnion"), is a Delaware limited liability company. All three Defendants are consumer reporting agencies ("CRAs") that regularly conduct business throughout the United States (collectively, "the CRA Defendants"). The CRA Defendants regularly assemble and evaluate consumer credit information and furnish consumer reports to third parties.

Chuluunbat opened and incurred debts on two credit card accounts: one with Citibank, and another with Comenity Bank (collectively, the "Debts"). Eventually, the Debts were purportedly obtained by Cavalry, and in 2018 Cavalry reported the Debts as though it owned them. On September 12, 2019, Chuluunbat sent two letters to Cavalry stating that their reporting was inaccurate. After receiving the letters, Cavalry continued reporting it owned the Debts. On October 22, 2019, Chuluunbat sent two more letters demanding that Cavalry provide documentation showing its ownership. Cavalry responded, providing Chuluunbat with account summaries that Chuluunbat

---

[1] The Court construes the allegations in the complaint as asserted against CPS and Cavalry interchangeably, and interchangeably references to both parties as "Cavalry" throughout this Memorandum Opinion.

2

alleges are insufficient to establish Cavalry's ownership interest in the Debt.

Chuluunbat also alleges that Cavalry has no purchase agreement for the Debt and does not own the accounts. On October 22, 2019, Chuluunbat sent letters to Experian, Equifax, and TransUnion, stating that inaccurate information was being reported on his credit report. Specifically, Chuluunbat claimed that Cavalry did not own the Debt, noting that Cavalry has failed to provide him with any documentation proving otherwise. The CRA Defendants allegedly did not respond but continued to report the Debts as owned by Cavalry.

On January 9, 2020, Chuluunbat filed the instant complaint alleging three counts of unreasonable reinvestigation under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681i(a) and 1681(e)(b) against the CRA Defendants. Chuluunbat also asserts a claim against Cavalry for furnisher liability under FCRA, 15 U.S.C. § 1681s-2(b). All four counts seek statutory damages under 15 U.S.C. §§1681n and 1681o.

On February 18, 2020, Experian moved to dismiss Chuluunbat's claims under Federal Rule of Civil Procedure 12(b)(6). Subsequently, Defendants Equifax and TransUnion joined Experian's motion. On March 10, 2020, Defendant Cavalry moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court addresses each motion in turn.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch*

3

& *Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. The CRA Defendants' Motion to Dismiss

The CRA Defendants urge the Court to dismiss Chuluunbat's complaint, arguing it fails to allege a factual inaccuracy as required to state a claim under the FCRA. The FCRA charges CRAs with duties to prepare credit reports utilizing "reasonable procedures to assure maximum possible accuracy of the information concerning the individual to whom the report relates." 15 U.S.C. § 1681e(b). Should a consumer

4

dispute information in her report, the FCRA also demands CRAs to conduct "a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." *Id.* § 1681i(a)(1)(A). To state a claim under either of the foregoing provisions, a consumer must sufficiently allege that her credit report contains inaccurate information. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). This is an independent and threshold element that must be met before even reaching the issue of whether procedures were reasonable. *See Henson*, 29 F.3d at 284; *Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 591 (7th Cir. 2019) (holding a consumer reporting agency "cannot be liable as a threshold matter [under Section 1681e(b)] if it did not report inaccurate information"); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) ("[T]o state a claim under [Section 1681e(b)], a consumer must sufficiently allege that a credit reporting agency prepared a report containing inaccurate information." (internal citations and quotation marks omitted)).

Section 1681e(b) does not explain what it means to be "inaccurate," nor does it draw a line between factual and legal "accuracy." But in *Denan v. TransUnion LLC*, the Seventh Circuit rejected plaintiffs' argument that FCRA required a CRA to look beyond the data provided by a furnisher to determine the legality of the plaintiffs' loans. 959 F.3d 290, 294–95 (7th Cir. 2020). The Seventh Circuit joined the First, Ninth, and Tenth Circuits in holding that a consumer's defense to a debt "is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting

5

agencies by the FCRA." *Id*. at 296 (internal citations and quotation marks omitted).

In *Denan*, the plaintiffs sued TransUnion alleging that it "knew or recklessly ignored" that the loans were unenforceable because they were void *ab initio* under Florida and New Jersey usury laws and continued reporting them in violation of Section 1681e(b). The Seventh Circuit found that TransUnion did not have a duty to verify the plaintiffs' debt liability and collectability, reasoning that such a task is properly left for a tribunal, not a CRA. *Id*. at 295–96. While the FCRA imposes a duty on furnishers to verify the legal validity of reported liabilities, the Seventh Circuit held that it does not impose such a duty on CRAs.

Here, the CRA Defendants contend that the Debt's ownership is a legal issue that is beyond the purview of a CRA to resolve. Accordingly, they argue that Chuluunbat has failed to allege that his report contains a factual inaccuracy.

Chuluunbat responds that ownership of the Debt is a pure question of fact and is therefore a factual inaccuracy that falls within the CRAs' purview to verify. For support, Chuluunbat relies on *In re Meyer*, 1998 U.S. App. LEXIS 20886 (7th Cir. 1998), in which the Seventh Circuit stated that "[t]he question of ownership is a pure question of fact . . . [reviewed] only for clear error." *Id*. at *13. Nevertheless, *In Re Meyer* involved ownership of a corporation, not a debt, and the FCRA was not implicated in that case as it involved a tax avoidance scheme that went askew.

Here, Chuluunbat alleges that the CRAs inaccurately reported the Debt as owned by Cavalry. According to Chuluunbat, that is factually inaccurate because the Debt is

6

not owned by Cavalry since Cavalry failed to produce a purchase agreement and only produced account summaries that allegedly do not demonstrate its ownership. As such, Chuluunbat argues that determining the ownership of the Debt is a factual issue that can be resolved by the CRAs upon production of Cavalry's agreement to purchase the Debt. We disagree.

To determine whether Cavalry owns the Debt, one must first determine whether there exists an instrument through which ownership of the Debt was transferred to Cavalry, whether the instrument was properly executed, and whether the instrument is legally enforceable. At best, these issues present mixed questions of law and fact that would require the CRA Defendants to go beyond the documentation provided by the furnisher to determine the legal accuracy of reporting the Debt's ownership. Because the factual question is so closely intertwined with legal questions, "the power to resolve [them] exceeds the competencies of consumer reporting agencies." *Denan*, 959 F.3d at 295. As such, we find that the CRA Defendants did not have a duty to go beyond the information provided by Cavalry to verify the accuracy of its purported ownership interest in the Debt. *See id*. (holding CRAs had no duty to go beyond information provided by furnisher to determine debt collectability).

Given that ownership of the Debt at issue here is a mixed question of law and fact, any inaccuracy relating to the Debt's ownership is a legal inaccuracy and not a factual one. Therefore, we find that Chuluunbat has failed to allege a factual inaccuracy as required to state an unreasonable reinvestigation claim under FCRA. Accordingly,

7

the CRA Defendants' motion to dismiss is granted with prejudice.

## II. Cavalry's Motion to Dismiss

Chuluunbat next alleges that Cavalry willfully and negligently failed to: (1) conduct an investigation of the inaccurate information that he disputed in violation of 15 U.S.C. § 1681s-2(b)(1)(A); (2) review all relevant information concerning his account provided by each credit bureau, in violation of 15 U.S.C. § 1681s-2(b)(1)(B); (3) report the inaccurate status of the allegedly inaccurate information to each bureau, in violation of 15 U.S.C. § 1681s-2(b)(1)(C); (4) properly participate and comply with the reinvestigations conducted by the Defendant CRAs, in violation of 15 U.S.C. § 1681s-2(b)(1)(D), and; (5) knowingly continued to furnish and disseminate inaccurate and derogatory credit, account and other information to the CRAs, in violation of 15 U.S.C. § 1681s-2(b)(1)(E).

To state a claim for a violation of Section 1681–2(b), a plaintiff must plausibly allege facts that, if proven, would show that (1) he notified a CRA that it was reporting inaccurate information; (2) the CRA relayed the plaintiff's claim to the information furnisher; and (3) the furnisher failed to investigate and correct the allegedly inaccurate information in question. *Id*; *Westra v. Credit Control*, 409 F.3d 825, 827 (7th Cir. 2005). Chuluunbat alleges that he notified the CRA Defendants that they were reporting inaccurate information, the CRA Defendants relayed the claim to Cavalry, and Cavalry failed to investigate and correct the allegedly inaccurate information in question.

Cavalry argues that the exhibits attached to Chuluunbat's complaint demonstrate that it complied with the requirements of Section 1681s-2(b). Specifically, these exhibits contain letters informing Chuluunbat that Cavalry investigated the dispute (in compliance with Section 1681s-2(b)(1)(A)); reviewed the dispute and verified the information listed on the account (in compliance with Section 1681s-2(b)(1)(B)); requested that the account be marked as disputed (in compliance with Section 1681s-2(b)(1)(C)); and determined that there was no inaccuracy to modify, delete or block (in compliance with Section 1681s-2(b)(1)(E)).

Given these letters, Cavalry argues that it was required to do nothing further than what it had already done to comply with its obligations under Section 1681s-2(b). Chuluunbat dismisses these exhibits, arguing that these actions took place at a time when Cavalry's obligations under the FCRA had not been triggered because he had yet to notify the CRA Defendants that they were reporting inaccurate information. We disagree.

Without authority supporting his position, Chuluunbat would have us disregard evidence that Cavalry proactively complied with its duties under the FCRA, simply because he chose to complain to Cavalry directly before notifying the Defendant CRAs of the allegedly inaccurate reporting. Such a holding would discourage furnishers from proactively complying with their statutory obligations under FCRA out of concern that they will have to do it all over again once the consumer triggers the process by filing a dispute with a CRA. Chuluunbat fails to provide authority to support such a holding,

and we believe that such a holding would fly in the face of the Act's purpose of ensuring accurate reporting of consumer credit information to, and by, credit reporting agencies.

According to Chuluunbat, the only way Cavalry could have discharged its obligations under the FCRA is by providing the purchase agreement for the Debt. But again, Chuluunbat fails to provide any authority showing that Cavalry was indeed required to provide such documentary evidence or do any more than what it had already done. In short, the exhibits attached to the complaint demonstrate that Cavalry discharged its obligations under FCRA well before it was even required to do so. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence.") (internal quotations and citations omitted). Accordingly, Chuluunbat has pled himself out of court by attaching these exhibits to the complaint. Therefore, the Court grants Cavalry's motion with prejudice.

## **CONCLUSION**

For the reasons mentioned above, the Court grants the Defendants' motion to dismiss with prejudice. It is so ordered.

Dated: 07/22/20

_____
Charles P. Kocoras
United States District Judge

10